Complaint
A# 2

# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD
# DALLAS FIELD OFFICE

| | |
|---|---|
| GRETA D. CRAWFORD,<br>        Appellant,<br><br>        v.<br><br>DEPARTMENT OF HOMELAND<br>   SECURITY,<br>        Agency. | DOCKET NUMBER<br>DA-0731-03-0446-I-1<br><br><br>DATE: December 19, 2003 |

Greta D. Crawford, Dallas, Texas, pro se.

Neal J. Swartz, Esquire, Washington, D.C., for the agency.

**BEFORE**
U. Sidney Cornelius, Jr.
Administrative Judge

## INITIAL DECISION

Greta D. Crawford filed an appeal on June 6, 2003, from a decision of the Department of Homeland Security, which found that she was not suitable for employment in the position of Immigrations Inspector.[1] The Board has jurisdiction over the appeal pursuant to the provisions of 5 C.F.R. § 701.501. At the appellant's request, a hearing was held in this matter.

---

[1] The position the appellant applied for was with the Immigration and Naturalization Service, which subsequently became a component of the Department of Homeland Security.

1

2

Based on the following analysis and findings, the agency's negative suitability determination is AFFIRMED.

## ANALYSIS AND FINDINGS

<u>The agency bears the burden of proving by preponderant evidence the charges on which its negative suitability determination is based.</u>

By application dated May 4, 2002, the appellant applied for the position of Immigrations Inspector, with the Department of Homeland Security. Appeal File (AF), Vol. 4, tab 5, subtab A(1). Pursuant to its authority under 5 C.F.R. § 5.2, the Office of Personnel Management (OPM) conducted a background investigation of the appellant. Based on that background investigation, the agency made an initial determination that the appellant was unsuitable for employment in the position for which she applied because of "Misconduct or Negligence in Employment" and "Criminal or Dishonest Conduct."[2] *See id.* In a show cause letter dated December 17, 2002, the agency advised the appellant of the specific allegations on which its determination was based and gave her an opportunity to provide an explanation or documentary evidence to dispute the allegations. *See id.* Following its consideration of the appellant's written response, the agency made a final determination that she was ineligible for an appointment as an Immigrations Inspector. *See id.* The appellant then filed this appeal.

When an agency's negative suitability determination is appealed to the Board, the agency must support the charges on which its determination is based by a preponderance of the evidence. A preponderance of the evidence is that

---

[2] Among the specific factors that an agency may consider in determining an applicant's suitability for employment in the competitive service are (1) misconduct or negligence in employment and (2) criminal or dishonest conduct. *See* 5 C.F.R. § 731.202(b) (2003).

degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more true than untrue. 5 C.F.R. § 1201.56(c)(2) (2003). If the Board finds that one or more of the charges are supported by preponderant evidence, the Board shall affirm the determination. 5 C.F.R. § 731.501(a) (2003).

The appellant engaged in misconduct or negligence in employment.

Based on OPM's investigative memorandum, the agency maintained that the appellant engaged in misconduct or negligence in her prior employment with Backus and Associates; Preferred Equities; and NOS Communications. The agency subsequently withdrew its specifications regarding the appellant's employment with Preferred Equities and NOS Communications. AF, Vol. 10, tab 40.

The show cause letter related the following regarding the appellant's employment with Backus and Associates, a law firm. The appellant was employed with Backus and Associates from October 1997 through February 1998, at which time she resigned. According to the show cause letter, the appellant resigned from this place of employment.[3] The appellant is ineligible for rehire at Backus and Associates because her resignation was a prelude to termination. The agency viewed this incident as quitting a job after being told she would be fired. Further information concerning the appellant's misconduct while employed by Backus and Associates disclosed that she was prone to explode in tirades, use foul language and that she regularly stated that the government was out to get her.

Stanley L. Johnson, Director of the National Hiring Center for the Department of Homeland Security, testified that he made the final decision with regards to the appellant's suitability. Johnson related that he had reviewed the

---

[3] The show cause letter inaccurately indicated that the appellant resigned from her position before being fired. The investigation reflects that the appellant was fired for inappropriate behavior in the workplace.

suitability investigation file and the appellant's responses. He said that, based on the record, he determined that the allegations regarding the appellant's employment at Backus and Associates were correct. Johnson referenced the appellant's application where, in response to Question Number 22, she answered "yes" to the question of whether during the last 7 years she had been fired and she indicated she had been fired from a job with Backus and Associates. He stated that her employer had found her resume' impressive but, because of her inappropriate behavior, she was terminated. *See* Appeal File, Vol. 2, tab 2, Attachment 6. Johnson contended that such behavior was not compatible with the performance of the duties of an Immigrations Inspector.

At the hearing, the appellant did not dispute the fact that she had answered, "yes" to the question of whether she had been fired in the last 7 years. She asserted that the evidence regarding her termination from Backus and Associates was "inconsistent." She also referenced her written response to the allegations in the investigative report. AF, Vol. 4, tab 5, subtab A5. In that response, the appellant noted that she had been fired by Backus and Associates in a restaurant in front of several other attorneys. She disputed the employer's claims about her inappropriate behavior and questioned his ability to judge her psychological condition because he is not a doctor. She opined that she had been fired to "mask" the firm's problems. The appellant acknowledged that, as related by Backus in his statement to the investigator, she had brought a rabbit to work. She explained that the animal had a scheduled "medical exam" and that it would have been "difficult to pick it up for the appointment."

Although the appellant indicated that she had been fired from Backus and Associates for "inaccurate reasons," there is no dispute that she was fired from employment in the last 7 years. I find unpersuasive her explanation that, because the law firm was having problems, she was terminated. She did not indicate that she had worked on a case or cases that were the source of the alleged problems. Moreover, she did not explain why she, an employee of only four months, was

chosen as a scapegoat or how, by her firing, the problem was resolved. Further, while the appellant might have seen nothing inappropriate about having a rabbit at work, I do not find her employer's opinion to the contrary unreasonable. Finally, I do not find it necessary for Backus to be a doctor to describe what he found to be inappropriate behavior.

Based on my review of the evidence of record, I find that the agency has supported it's charge of "Misconduct or Negligence in Employment" by a preponderance of the evidence. Proof of one specification supporting a charge is sufficient to prove the charge. *See, e,g., Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1371 (Fed. Cir. 1998). Therefore, the charge is sustained.

The appellant engaged in criminal or dishonest conduct.

The agency listed three specifications to support the charge of "Criminal or Dishonest Conduct." Johnson confirmed that he considered the findings of the OPM investigation regarding specifications one, two, and three. He stated that he also considered the appellant's responses. He related that he determined that the allegations set forth in the specifications were accurate and supported the determination that the appellant is unsuitable for employment as an Immigrations Inspector.

Specification One:

Under specification one, the agency related that in April 2001, the night manager at the appellant's place of residence called the local authorities when he heard the appellant banging her head on a wall in her apartment. He, other residents, and workers were worried that the appellant would harm herself or even attempt to take her own life. The police arrived and arrested the appellant. The appellant resisted the arrest, claiming that there was no reason for the police to have been called. The appellant was placed in a single holding cell and given medication to calm her down. After 20 hours in the holding cell, the appellant

was transported to the Green Oaks Center for a psychiatric evaluation. The hospital bill from the Green Oaks Center totaled $4,000.

The appellant testified regarding each of the investigative report's findings. In reference to the April 2001 incident, she claimed that the incident has been expunged from her record. She also claimed that there had been an "excessive" number of complaints identifying the people in the hotel where she lived as being "crazy." She said that there was no evidence to support the claim that she had beat her head against the wall.

The appellant also referenced her response to the show cause order. In her response, she claimed that she had been "unlawfully" rousted from her house and dumped in a hospital over a "deliberately exaggerated and falsified report." She said that she had been calmly seated after entering the hospital, but within minutes, without a medical examination, she was given a drug. The appellant contended that she had been billed approximately $4,000 for "24 hours of sitting." She related that she had also been taken to another hospital and told that they "were lying." The appellant stated that she was released without any healthcare instructions and that the "allegations" had been abandoned by the hospital.

The investigative report reflects that the Dallas Police Department has no record of an arrest of the appellant during the time period in question. AF, Vol. 4, tab 5, subtab A, p. 52. It indicates that the investigator was unable to confirm the appellant's arrest or even that she was held in "protective custody." Although the appellant acknowledged that the police came to her apartment and that she was taken to the hospital, she denied unequivocally that she engaged in any criminal misconduct. The fact that the police were called and the appellant was taken to the hospital does not support the conclusion that the appellant engaged in criminal misconduct in April 2001. The agency produced no evidence or witnesses to contradict the appellant's sworn version of the events. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Accordingly, I find that

the agency has failed to prove by preponderant evidence the allegations of specification one.

Specification Two:

Under specification two, the show cause notice related the following. In July 1996, the appellant was involved in a verbal argument with her ex-boyfriend. The police arrived and witnessed the appellant striking her ex-boyfriend with a stick.[4] The appellant was arrested for "Assault with a Deadly Weapon" and spent the night in jail. In her Personal Subject Interview (PRSI) of June 30, 2002, "conducted under unsworn declaration," the appellant explained that before the alleged assault, she had previously been injured during the verbal argument with her boyfriend. She said that he threw a can in her face and injured her eye. The appellant went to the hospital and was treated with a "cornea abrasions," with bills totaling approximately $700 to $1500. No payments were made on the bill and on March 15, 1999, the appellant was ordered by the court to pay $550 as settlement of the hospital bill.

Included in the record is a copy of documentation from the Superior Court of the District of Columbia cited by the agency to support the specification. AF, Vol. 4, tab 5, subtab 2(A)(2), p.75 and Vol. 5. tab 5, subtab 8(30). The documentation reflects that the appellant had been charged with "Assault" and that the charge was dismissed by the Superior Court on January 14, 1997. Also, the appellant acknowledged on her application for employment, that she had been charged with "Assault with a Deadly Weapon;" however, she noted that the charge had been dismissed.

---

[4] Johnson's decision letter, dated May 7, 2003, related that the show cause letter inaccurately stated that the police witnessed the appellant striking her ex-boyfriend. Johnson said that the police took a statement from the appellant's ex-boyfriend, wherein her boyfriend claimed that the appellant had struck him. He acknowledged that the police did not say that they "witnessed" the appellant strike him.

The appellant testified that she did not assault her ex-boyfriend. In her response to the agency, she indicated that her ex-boyfriend had assaulted her, that she reported the assault, and in retaliation, he had filed a false statement with the police, claiming that she hit him. She acknowledged the cited hospital bill and the settlement; however, she said that she had not been ordered by the court to settle the matter.

The record reflects that, as alleged by the agency, the appellant was charged with "Assault with a Deadly Weapon." The record also reflects, however, that, as asserted by the appellant, the charge was dismissed. The appellant testified unequivocally that she did not assault her ex-boyfriend. The agency provided no other witnesses or evidence to rebut the appellant's sworn testimony. Moreover, that agency did not claim or show that the incident involving the hospital bill involved criminal misconduct. Accordingly, I find that agency has failed to prove by preponderant evidence the allegations of specification two.

Specification Three:

Under specification three, the notice related that in June 1996, the appellant was arrested for being "Drunk in Public." In the appellant's PRSI, she disclosed that she was intoxicated and out in the street without shoes on when the police arrived at the scene. She was arrested and spent approximately six hours in jail. The appellant was convicted of being "Drunk in Public" and ordered to pay a fine of $75.

The appellant did not dispute the facts set out under specification three. In her response, she explained that the misconduct had initially resulted in a mistrial; however, the District Attorney brought the charge again, resulting in the conviction. The appellant contended that the conviction was for a "petty offense."

The facts surrounding this specification are basically undisputed. Although the appellant claimed the offense was "petty," she did not dispute that she was

convicted for being "Drunk in Public." Accordingly, I find that preponderant evidence supports the allegations of specification three.

I have found that specification three is supported by a preponderance of the evidence. Therefore, charge two is sustained. *See Lachance* at 1371.

<u>The appellant asserted affirmative defenses on which she bears the burden of proof.</u>

Notwithstanding the fact that the agency has supported its action by preponderant evidence, the agency's action may not be sustained if the appellant shows that the agency's decision was based on a prohibited personnel practice as described at 5 U.S.C. § 2302(b). The appellant alleged that the agency's action was the result of discrimination because of her race, black, and her sex, female. Appeal File, Vol. 10, tab 40. The appellant also alleged that the agency's action was based on disability discrimination. Further, she alleged that the action was taken in retaliation for her whistleblowing activities. Finally, she alleged that her due process rights had been violated by the agency. The appellant bears the burden of proof on her affirmative defenses. 5 C.F.R. § 1201.56(a)(2) (2003).

<u>The appellant has failed to establish that the agency's action was based on discrimination because of her race and sex.</u>

In reviewing an allegation of discrimination, the Board has adopted the allocation of the burden of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The appellant may meet this burden with respect to her allegations by showing that: (1) she is a member of a protected group; (2) she was similarly situated to an individual who was not a member of his protected group; and (3) she was treated more harshly or disparately than an individual who was not a member of his protected group. *See Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 497 (1997).

If the appellant succeeds in establishing a prima facie case of discrimination, the burden of going forward then shifts to the agency to show that it had a legitimate nondiscriminatory reason for its action. *McDonnell Douglas* at

802; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981). At this point, the appellant must present evidence to show that the agency's justification is a pretext for a discriminatory motive. *Buckler* at 497.

The record supports the appellant's claim that as a black female, she is a member of two protected groups. It does not support her contention that she was similarly situated to an individual who was not a member of those protected groups who was treated less harshly than she. Specifically, she did not identify any individual who is not black and/or female who was treated differently by the agency under circumstances such as those found in this case. I find, therefore, that the appellant has failed to establish a prima facie case of discrimination on the basis of her race and sex. *See Romeo v. Equal Employment Opportunity Commission*, 55 M.S.P.R. 527 (1992); *aff'd* 22 F.3d 1104 (Fed. Cir. 1994) (Table). Accordingly, these affirmative defenses must fail.

<u>The appellant has failed to show discrimination on the basis of a disabling condition.</u>

An individual with a disability is a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities;[5] has a record of such impairment; or is regarded as having such an impairment. *See* 29 C.F.R. § 1630.2(g) (2003). To establish a prima facie case of disability discrimination, an appellant must show that she is an individual with a disability under 29 C.F.R. § 1614.203(a) (2003) and to the extent possible, articulate a "reasonable accommodation" under which she believes that she could perform the essential duties of the position or of a vacant position to which she could be reassigned. *See Haack v. United States Postal Service*, 68 M.S.P.R. 275, 281 (1995); *Phillips v. Department of the Navy*, 67 M.S.P.R. 74, 76 (1996);

---

[5] Under 29 C.F.R. § 1630.2(i) (2003), major life activities are functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

*Savage v. Department of the Navy*, 36 M.S.P.R. 148, 152 (1988). The agency then must show that its action was not based on the appellant's disability, or that the appellant is not a qualified individual with a disability under 29 C.F.R. § 1630 because the accommodation under which the appellant can perform the duties in question imposes an undue burden on the operation of the agency. *Id.* at 153.

The appellant did not claim to have a disabling medical condition. She indicated, however, that the agency's action was the result of disability discrimination because it regards her as having a mental condition. Although Johnson acknowledged that he questioned the appellant's emotional stability, he did not testify that he had determined that she suffers from a disabling mental condition. Moreover, the agency's show cause letter does not reflect that the agency has found the appellant unsuitable for employment because of a disabling mental condition. Accordingly, I find that the appellant has failed to establish disability discrimination on the part of the agency and this affirmative defense must fail.

<u>The appellant has failed to show the agency's action was taken against her in retaliation for her whistleblowing activities.</u>

In support of her contention that the agency's action was taken in reprisal for her whistleblowing activity, the appellant stated that she had filed a lawsuit in January 2001 against the United States government. She said that information from the lawsuit had been distributed "all over Dallas, Texas." She claimed that the investigators had seen an unidentified document from the lawsuit.

The WPA prohibits an agency from taking a personnel action, as reprisal for an employee's having disclosed information protected under 5 U.S.C. § 1221(a). A disclosure protected by the WPA is one which the employee reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a specific danger to public health and safety. *See* 5 U.S.C. § 2302(b)(8).

The appellant has the burden of proving that a reasonable person in her position would have reasonably believed that a disclosure is covered by the WPA. The appellant's burden also requires her to show that her protected disclosure was a contributing factor in the agency's decision to take the removal action. *See Scott v. Department of Justice*, 69 M.S.P.R. 211, 236, *aff'd*, 99 F.3d 1160 (Fed. Cir. 1995) (Table).

The appellant did not provide a copy of the pleadings filed in the lawsuit that she referenced to support her claim that the agency's decision was retaliation for her whistleblowing activities. Therefore, it is not known specifically what she alleged or disclosed in the lawsuit. Moreover, although the appellant claimed that a document from the lawsuit had been widely distributed, she failed to identify anyone who was involved with the suitability determination who knew of the lawsuit or who would had a reason to retaliate against her as a result of it. Specifically, she did not show why Johnson, the deciding official, or anyone else at the agency would have had a reason to retaliate against her as a result of the lawsuit. Based on my review of the record as a whole, I find that the evidence provided is insufficient to establish that the appellant made a protected disclosure that was a contributing factor in the agency's determination that she is unsuitable for employment.

<u>The appellant has not shown that the agency violated her right to due process.</u>

The appellant asserted that the agency had violated her right to due process. She explain that she had been led to believe that she was selected for a position with the agency and that she was later told that she had been found to be unsuitable as the result of an investigation. She argued that the investigation had been poorly conducted and that the suitability determination should not have been based on such an investigation with unsubstantiated charges. Further, the appellant argued that any misconduct that was proven was minimal and, therefore, did not support a finding that she is unsuitable for the position for which she applied.

There is no dispute that the appellant was advised of the charges made against her and that she was provided an opportunity to respond to those charges. The record reflects that she took advantage of that opportunity. Moreover, the record reflects that the deciding official considered the appellant's response in making his decision. He explained, however, that he did not find her explanations persuasive. He also explained that, although an offer of employment had been made to the appellant, it was considered "tentative" until the application process was completed.

The fact that Johnson did not agree with the appellant's rebuttal arguments does not support a conclusion that the appellant was denied due process. The appellant's contentions and opinions reflect that she is unhappy with the outcome of the suitability determination investigation, not that she was denied due process. Accordingly, I find that the appellant has failed to show that she was denied due process by the agency.

<u>The reasons given by the agency for its suitability determination are supported by preponderant evidence.</u>

In conclusion, I found the agency's charge that the appellant engaged in "Misconduct or Negligence in Employment" supported by preponderant evidence and that charge was sustained. I further found the agency's charge that the appellant engaged in "Criminal Conduct" supported by preponderant evidence and that charge was sustained. Having found that the charges are sustained, the agency's suitability determination must be affirmed. *See* 5 C.F.R. § 731.501(a) (2003).

## DECISION

The agency's suitability determination is AFFIRMED.

FOR THE BOARD:          U. Sidney Cornelius, Jr.
                        Administrative Judge

### NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the administrative judge may vacate the initial decision in order to accept a settlement agreement into the record. *See* 5 C.F.R. § 1201.112(a)(5).

### NOTICE TO APPELLANT

This initial decision will become final on **January 23, 2004**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

> The Clerk of the Board
> Merit Systems Protection Board
> 1615 M Street, NW.,
> Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), or personal or commercial delivery. A petition for review may also be filed by electronic mail (e-mail) if the petitioning party makes an election under 5 C.F.R. § 1201.5(f), which requires a written statement of the election that includes the e-mail address at which the party agrees to receive service. Such an election may be filed by e-mail at the following address: e-FilingHQ@mspb.gov.

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

> The United States Court of Appeals
> for the Federal Circuit
> 717 Madison Place, NW.
> Washington, DC 20439

Case 1:05-mc-00521-JDB   Document 15-3   Filed 02/06/2006   Page 17 of 18

17

You may not file your petition with the court of appeals before this decision becomes final. To be timely, your petition must be received by the court of appeals no later than 60 calendar days after the date this initial decision becomes final.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent by regular mail, unless otherwise indicated below, this day to each of the following:

Appellant

Greta D. Crawford
5702 Victor Street
Apt. 6
Dallas, TX   75214

Agency's Representative(s)

Neal J. Swartz, Esq.
Associate General Counsel
U.S. Department of Homeland Security
Bureau of Immigration & Border Protec.
425 I Street, N.W., Room 6100
Washington, DC   20536

Other

Kenneth L. Bates
U.S. Office of Personnel Management
Employee Relations Division
1900 "E" Street, N.W., Room 7412
Washington, DC   20415

December 19, 2003
_____
(Date)

_Ann R. Fluellen_ (signature)
Ann R. Fluellen
Paralegal Specialist

18